The next case is United States v. Davila. Devin McLaughlin for Rodolfo Davila. We are appealing Judge Sessions' denial of his motion to withdraw his guilty plea and the decision to go ahead and forfeit two pieces of his real property. With regard to the denial of the motion to withdraw the guilty plea, it's our position that Judge Sessions made a mistake of law by going ahead and relying on prejudice to a co-defendant in connection with an interlocked plea. So my client, Mr. Davila, and his sister had wired or interlocked pleas, meaning you need both of them to plea in order for that to go forward. Judge Sessions, in denying our motion... Why is it erroneous to take into account any statement about prejudice to the government? But why in deciding whether to allow a withdrawal of a plea isn't, so long as the plea was substantially voluntary, why isn't prejudice to other parties something that should be taken into account? And, Your Honor, I'm trying to understand the rationale for why it should be when effectively what it does is create a superior right in the co-defendant than the defendant. So the defendant has an interest in go ahead and... No, no. The question always is, was the plea voluntary? If a plea was not voluntary, then it has to be reverted. It has to be. But if it was voluntary, but they want to remove, to take it back fairly very soon, the court can, in its discretion, do it. But if other people are harmed, doesn't that count as to whether the discretion should go one way or the other? From my perspective, Your Honor, if you're... No, I understand. From your perspective, no. But in terms of what makes sense... And, Your Honor, I'm trying to argue for why it makes sense. If you end up putting the co-defendant's interest on the scale, from our perspective, her interest in her plea is superior to my client's interest in withdrawing his plea. And they're both at a level place. The defendant gets to decide whether to plea or not plea. Government gets to decide whether they're going to interlock. But when I'm looking at my client's desire and interest in withdrawing his plea, let's assume he satisfies the other criteria that would bring you there. Why the co-defendant's interest in maintaining her plea is given weight against his interest in withdrawing his plea makes her interest superior. And frankly, there's no basis for that, Your Honor. So why wouldn't... I guess I'm having the same puzzle as what would be wrong with putting that as one factor that could be considered certainly not necessarily determinative and the plea has to be voluntary. But wouldn't you agree that a judge could take into account, for instance, in a case where it was relevant, the prejudice to victims? And so I guess I... So what's wrong with co-defendants then? So, Your Honor, I 100% agree that the list of factors in the usual litany is not exclusive. And one can go ahead and consider prejudice to victims, etc. And I thought of that, if they've got resolution on a plea and they put it behind them and now it's being withdrawn, how is that going to impact them, etc. Here, with regard to a co-defendant, I was trying to think, when would it really actually potentially matter? Because I'm not asking for a blanket rule. I'm asking, what about happened in this case? I could see a co-defendant. She entered her plea. My guy entered his plea. She then what? Destroyed all her exculpatory evidence, did all sorts of... I could see an argument where the co-defendant is now prejudiced by virtue of going ahead and having this plea withdrawn. But here it is. She wants a plea. He doesn't want a plea. Now you're making... Sorry. Now you're making a different argument. You're saying that here, there wasn't adequate prejudice to a co-defendant. But that's a very different argument from saying that the court erred in considering possible prejudice to a co-defendant. So explain to me why this was not a type of prejudice that the court could consider at all. And Your Honor, you're absolutely correct. I'm not arguing for a blanket rule that says one could consider prejudice to a co-defendant. Here, the only prejudice to the co-defendant is that she loses her plea. My guy wants the plea to go away. And so how you can put that on the scale, again, absent additional evidence that shows actual prejudice to her, that's my argument on prejudice. So you're 100% right. I'm not looking for a blanket rule. But in this case, absent additional evidence as to why it actually prejudiced her other than the loss, that loss is not somehow superior to my guy's inability to get back his plea. So that would be our position. Can I ask about one of the other factors that we typically consider when a district court is denied a motion to withdraw a plea? And one is whether the defendant has asserted his legal innocence. My understanding is that your I understand is one of the factual stipulations for guidelines purposes, but he's not actually asserting his innocence of the crime that's charged. Am I correct? You're absolutely right. I mean, his only contest had to do with the quantity, which wouldn't rise to the level of legal innocence. I do want to get to forfeiture because I think there's some interesting forfeiture questions raised here. So skipping ahead to that. Our position on forfeiture, Your Honor, is obviously the government has the burden to go and prove forfeiture, agreed that the presumption exists here for Mr. Davila because he acquired these properties during the pendency of the violation, and he has no other source presented for purchasing them. But as you saw from the briefing, our point is that there's no way under the numbers presented by the court and found by the court that he ended up netting enough money to buy these. But counsel, if one of the properties was used in the commission of a crime, then that can be forfeited in itself. And if that is so, then isn't the amount of money sufficient for the purchase of the other property? So that as to one, it can be forfeited for commission of crime, and as to the other, there's enough evidence of money. Am I wrong? Um, I would say half right, half wrong, Your Honor. Sorry. So a pretty good average. Yeah, yeah, I'll take it. I'll take the other half if you rule in my favor. But so 55 River Street is a facilitating property clearly is we have a difficult road on that one. So then we get to is money to buy both properties, Your Honor. And that's a factual inquiry in terms of whether the government has established that these are derivative from proceeds of the crime. And the fact that a facilitating property, which costs 148,000 can be forfeited by virtue of that, that doesn't factually take it out of the analysis and whether the guy had enough money. I mean, the question is whether the guy had enough money. Let me ask you that your analysis. You figure out and you said before, whether he netted if he poured $100,000 of his own capital into his, his drug trade, and he was a very poor businessman. And he only generated a 10% profit. And he came out with 110,000. And then, you know, selling whatever heroin, and then he took the 110,000 and bought houses, they would be 100% forfeitable, right? We don't look for net profits. We're not trying to figure out only only profitable drug dealers forfeit. I mean, you can be a bad drug dealer or a poor businessman. And we look at proceeds, right? I mean, we look at proceeds and nonprofits. Your Honor, you look at so I, you know, I 100% agree with what judges and says, which is that there's no burden on the government to prove net profit. It's always gross and gross proceeds. And so I'm not making a part of the burden. But what I am saying is that when the government's own evidence and math shows that the guy didn't make enough money from this charge conspiracy to buy these properties right at the outset of the conspiracy, because they're bought in December and January, then no, they cannot establish that these are that these are derivative from proceeds of his drug dealing in this charge conspiracy. It's just it's not an element of their case. But because the math is what it is, it's from our perspective, they can't show that he got all this by December and January. I do. I've spent too much time reading the Capaccio decision and trying to understand it. But I really think it 100% supports our position in Capaccio for what it's worth. They're trying to get pre May 2000 proceeds. One of the counts in Capaccio was conspiracy that started in July one of 2000. And the court could not rely on that conspiracy charge to get back to pre May $2,000. Here, we have an honor about and I understand that stretches it. So let's say summer of 2016. You don't have enough time to net enough money to have bought the 41 Jarvis Street property, which is not a facilitating property, and also can't be used as substitute proceeds because as the court analyzed it at the end, he forfeited enough without that to supersede the amount of the calculated loss. Thank you. We'll hear from the government. Please the court. My name is Nate Burris, and I'm from the United States Attorney's Office in Burlington, Vermont. And I also represented the government in the district court below. Unless the court prefers otherwise, I'd like to begin by addressing the defendant's forfeiture related arguments. Forfeiture is part of the sentence imposed on defendants who have been authorized forfeiture as a form of punishment. One of the purposes of forfeiture, as is relevant here, is to deprive offenders of the fruits of their illegal acts. And the defendant here makes no claim that the two residences at issue were purchased with anything other than the proceeds of his drug distribution enterprise. Instead, as I understand it, the defendant's forfeiture arguments are based on the assertion that the drug proceeds used to purchase the residences were obtained prior to the date of the conspiracy to which he pled guilty. And this argument is flawed for several reasons. First, all of the defendant's proceeds were obtained during the charge conspiracy because the conspiracy commenced in or about late 2016. And therefore, or proceeds obtained reasonably near, but prior to late 2016 were necessarily encompassed by the conspiracy charge. Second, even if some of the proceeds were obtained prior to the conspiracy, the government is nonetheless entitled to the criminal forfeiture of proceeds, even if they're obtained outside the charge conspiracy, so long as the government has established the requisite nexus between those proceeds and the conduct of which the defendant was charged and convicted. This court's decision in Capocia noted that where the conviction is for engaging in a conspiracy, the government need only establish that the forfeited assets have the requisite nexus to the conspiracy. And in this instance, the requisite nexus comes from section 853A1, which simply asks whether the proceeds to be forfeited constitute, whether the property to be forfeited constitutes proceeds of a felony drug offense. Unless there are any questions regarding forfeiture, I'll turn briefly to the defendant's motion to withdraw his guilty plea. Well, can I just ask, so you're not, you're not taking issue with the math involved? I mean, you're saying we could go back to August or July, but you're not, you're not quibbling about what the monthly receipts for a one kilogram business would be? Your Honor, in the district court, the government sought a money judgment for approximately $443,000. And as this court's decisions have held, the calculation of forfeiture is not an exact science. The evidence showed that Mr. Davila was selling heroin at three separate price points. The government divided up the potential sales based on those three price points. The math would typically take me more than 10 minutes to do, so I will try my best to summarize it briefly. But if we were to calculate the defendant's profits on one kilogram of heroin at those three price points, this would total approximately $443,000. And that would be sufficient easily to support the forfeiture of both of these residences, as well as the sums of United States currency that were seized in hand by law enforcement. Addressing the defendant's motion to withdraw his guilty plea very briefly, as the court noted, the focus should be on voluntariness. And in this instance, the record demonstrates that the defendant reviewed the plea agreement paragraph by paragraph with his counsel, that he was aware that even after the plea negotiations, there was no change to the kilogram of heroin stipulation, and that the defendant then signed the plea agreement, initially in every page, including the page on which the stipulation appeared. And then the defendant reaffirmed his agreement to the kilogram of heroin stipulation in a supplement to the plea agreement. And during the change of plea hearing, Judge Sessions confirmed that the defendant had reviewed and understood the plea agreement. He highlighted the kilogram of heroin stipulation, and then confirmed directly with the defendant that the defendant understood the major points of the agreement. And he made certain that the defendant still wanted to proceed with his guilty plea and that his decision was voluntary, free and voluntary. This court has recognized that defendant's statements at a change of plea carry a strong presumption of accuracy. And with that being said, unless the court has any further questions, the government will rest on its written submission. Thank you. We'll hear rebuttal. Thank you, Your Honors. On the forfeiture issue, with regard to Judge Livingston's question about the math, A, the judge found in the money judgment aspect that it was the $224,000-ish. I will also point out that even if you accepted the government's way of doing the math of the $443,000 gross, and then you take it over 19 months of the conspiracy, that comes out to $23,000 a month gross, which again reinforces the notion that there's not enough net money to buy these properties. I do take issue with the notion that the court can go outside the charged conspiracy time frames to go ahead and base a forfeiture. The law is pretty clear that the government chooses how it wants to frame the charges, and that criminal forfeiture needs to be related to the charge actually put forward. And here, the government chose from honor about late 2016. I agree with the government that it can go past the fall, because that would be late 2016. And so it needs to be somewhat near that. So I'll go back to the summer. But once you unmoor it from the charges completely, and the duration of the conspiracy, that is not permitted. And I think Capaccio 100% supports that. Because again, in Capaccio, there was a conspiracy charge that started July 1, 2000. And the Second Circuit held, we can't go back and forfeit May or pre-May dollars. And yes, there's a nexus to the conspiracy. But if you look at the cases they rely on, it's more non-charge acts that happened during the course of that conspiracy, not pre-conspiracy conduct. So that would be my position. Thank you very much. Thank you both. And we will take the matter under advisement. Nicely done on both sides. Yes. I took your CLE on Monday, so. Good, good. Thank you both.